## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MANUEL PUPO-LEYVAS,**<br>**HOMELESS**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)    **C.A. No.** _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, MANUEL PUPO-LEYVAS, seeks compensatory damages arising from Defendant's negligence in failing to adhere to the prevailing standard of care in protecting inmates which is generally recognized as acceptable and appropriate, and alleges as follows:

### Nature of the Action

1.    This is a negligence action brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, after the exhaustion of all administrative remedies.

2.    The allegations in this Complaint are based on the personal recollection of Manuel Pupo-Leyvas ("Plaintiff") and are alleged on information and belief.

3.    Plaintiff was incarcerated in the United States Penitentiary Terre Haute ("USP Terre Haute") prison complex from approximately March 2003 until December 2005. This action arises out of the exceptionally dangerous conditions that existed in the USP Terre Haute during the period of Plaintiff's detention, conditions about which Warden Mark A. Bezy and various Federal Bureau of Prisons ("BOP") personnel and corrections officers, identified herein as BOP

John or Jane Does Nos. 1-20, all of whom were employees of the United States ("Defendant"), were clearly cognizant and for which they were personally responsible. These conditions directly resulted in a brutal, unprovoked attack on Plaintiff by his fellow inmates, causing disabling and permanent physical and psychological injuries to Plaintiff.

4.      During all relevant times, at the USP Terre Haute, there was a thriving economy in highly potent alcohol that was produced, marketed, consumed and abused by many inmates. The ease with which inmates in a high security facility – many of whom are incarcerated for violent crimes and/or belong to gangs – could become intoxicated created a substantial risk of prisoner-against-prisoner violence. There were numerous incidents of serious violence perpetrated by intoxicated prisoners during the employ of Warden Bezy and BOP John or Jane Does Nos. 1-20. Many of these incidents were random and unprovoked, and many involved victims who did not consume any alcohol.

5.      At all times relevant to this complaint, the number of corrections officers available to prevent violence among inmates at the USP Terre Haute was clearly inadequate.

6.      Plaintiff was the victim of a vicious, unprovoked assault at the hands of at least two intoxicated inmates during his incarceration. The attack resulted in serious physical and emotional injuries to Plaintiff and has left him blind in his right eye and visually impaired in his left eye. Plaintiff was assaulted for at least twenty minutes before corrections officers intervened.

7.      The availability of prisoner-made alcohol and the pervasiveness of prisoner alcohol abuse, combined with inadequate staffing levels, constituted a serious and palpable threat to inmate safety at USP Terre Haute. Warden Bezy and BOP John or Jane Does Nos. 1-20 were aware of these conditions for several months prior to the brutal attack on Plaintiff. By allowing

the production of, and black market in, inmate-distilled alcohol, in a chronically understaffed prison environment, Warden Bezy and BOP John or Jane Does Nos. 1-20 negligently breached their duty of care owed to Plaintiff.

8.     Plaintiff has fully exhausted his rights under the Bureau of Prisons Administrative Remedy process.  On May 22, 2007, Plaintiff filed his Standard Form 95 for negligence to Michael Nalley, Regional Director of North Central Regional Office of the Federal Bureau of Prisons in Kansas City.  The Bureau of Prisons failed to make a final disposition of Plaintiff's claim within six months of its submission, which constitutes a final denial under 28 U.S.C. § 2675(a).

## Jurisdiction and Venue

9.     This court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

10.     Venue is proper in this Court under 28 U.S.C. § 1402(b).

## Parties

11.     Plaintiff is an adult individual.  Plaintiff arrived in the United States in May 1980 as a political refugee from Cuba as part of the Mariel boat lift.  Plaintiff currently resides in Washington, D.C.  At all times relevant to the allegations herein, Plaintiff was an inmate incarcerated at USP Terre Haute.

12.     Defendant United States of America is a sovereign entity.  The United States is the proper defendant pursuant to the FTCA and is named as a defendant by and through the actions of its agency's officers at the Federal Bureau of Prisons.  Defendant, acting by and through the BOP, owns and operates a prison known as the USP Terre Haute.

13.    During all times relevant to this action, the BOP employed Mark A. Bezy as Warden of the USP Terre Haute and BOP John or Jane Does Nos. 1-20, whose names are unknown, as corrections officers at the USP Terre Haute.

## Material Facts

14.    Defendant United States of America, through the BOP, had in its employ Warden Mark A. Bezy, over whom it exercised exclusive control and supervision, with the right to employ and discharge.  At all times relevant to this action, Warden Bezy was acting within the scope of his office or employment.

15.    Warden Bezy was responsible for, *inter alia*, the custody, care, protection, and safety of Plaintiff while Plaintiff was an inmate at USP Terre Haute.  As Warden, Bezy was responsible for enforcing rules, regulations, policies, procedures and guidelines to maintain an orderly environment and to protect inmate safety at the institutional level at USP Terre Haute.  As Warden, Bezy was also responsible for appropriate staffing levels of corrections officers to ensure inmate safety.

16.    Defendant United States of America, through the BOP, had in its employ corrections officers and prison guards at the USP Terre Haute, BOP John or Jane Does Nos. 1-20, over whom it exercised exclusive control and supervision, with the right to employ and discharge.  At all times relevant to this action, BOP John or Jane Does Nos. 1-20 were acting within the scope of their office or employment.

17.    BOP John or Jane Does Nos. 1-20 were responsible for the day-to-day custody, care, protection and safety of Plaintiff.  Certain BOP John or Jane Does Nos. 1-20 were also responsible for determining and ensuring appropriate staffing of security personnel in the USP Terre Haute.

18.     At all times material to this action, Plaintiff was dependent on Defendant for his custody and care, protection and safety, including his physical safety.

19.     At all times relevant to this action, BOP John or Jane Does Nos. 1-20 and Warden Bezy were acting within the course and scope of their employment as agents, servants, or employees of the Defendant.  At all times relevant to this action, the acts and/or omissions of Warden Bezy and BOP John or Jane Does Nos. 1-20 were not based on discretionary policy considerations, the exercise of due care in the execution of a statute or regulation, or in the performance or failure to perform discretionary functions, but instead violated clear agency directives.

20.     Plaintiff was incarcerated at the Terre Haute Federal Correctional Complex from approximately March 2003 through December 2005.  Plaintiff arrived at the USP Terre Haute in the custody of the INS.

21.     On or about December 2004, as plans for his supervised release were being made, Plaintiff's detention at the USP Terre Haute was extended because of possible violations in the late 1980s of the conditions of his parole for 1982 property crimes in the District of Columbia. Plaintiff's projected release date was pushed back to December 2005 as a result of subsequent parole hearings.

22.     In 2001, by order of Congress, the D.C. prison complex in Lorton, Virginia was closed, and the BOP was authorized to house D.C. Code offenders in any facility in the country.  The BOP kept Plaintiff in the general population of the USP Terre Haute, where the actions giving rise to this complaint occurred.

23.     The Terre Haute Federal Correctional Complex contains two main facilities: the medium security Federal Correctional Institution ("FCI Terre Haute") and the high-security USP Terre Haute.

24.     Upon his arrival at the Terre Haute Federal Correctional Complex, Plaintiff was initially housed in the "I Unit" of the United States Penitentiary.  The "I Unit" of the USP Terre Haute housed inmates in custody for immigration-related reasons.  The "I Unit" did not house members of the USP Terre Haute's general population.

25.     Approximately six months later, Plaintiff was designated to the general population of the USP Terre Haute and was housed in the "K Unit".  In or around March of 2005, Plaintiff was transferred to the "E-1 Unit" of the new USP Terre Haute facility, which also housed members of the prison's general population.

26.     The general population of the USP included a substantial number of violent offenders and individuals with violent dispositions and tendencies.  Many inmates in the general population had been convicted of homicide offenses, armed robberies, and weapons crimes.

27.     Prison gangs were rampant throughout the general population and gang membership was high.  Violence among the inmates in the prison's general population was common.

28.     During his time in the USP Terre Haute, Plaintiff was not a member of a gang, did not drink alcohol or use illegal drugs, and was not subject to any disciplinary action.

29.     While confined in USP Terre Haute, Plaintiff worked in the kitchen and in the law library tutoring fellow inmates who were working towards their GEDs.  Plaintiff consistently received satisfactory reviews for his prison employment.

30.     Given Plaintiff's prison record while confined in the "I Unit" and the reasons for his detention, Plaintiff was not a proper candidate for initial designation to the general population of a BOP maximum security facility like the USP Terre Haute.

31.     Given Plaintiff's prison record while confined in the "K Unit" and "E-1 Unit" and the reasons for his detention during that time, Plaintiff was not a proper candidate for ongoing

placement in the general population of a BOP maximum security facility like the USP Terre Haute.

32.    Throughout the period of Plaintiff's detention at the USP Terre Haute, prisoners produced and sold to other prisoners an extremely potent bootleg alcohol.

33.    To make the bootleg alcohol, prisoners obtained large quantities of seemingly innocuous food products, such as sugar, tomato paste, ketchup, and orange juice from locations throughout the prison facility, including the kitchen and the commissary.

34.    Inmates often acquired the necessary ingredients for the alcohol directly from prison personnel, including corrections officers.

35.    Some corrections officers at the USP Terre Haute sold ingredients for the alcohol to inmates, with knowledge that the ingredients would be used for the production of alcohol.

36.    The ingredients were mixed together and allowed to ferment in containers. Once the ingredients had sufficiently fermented, it would be heated and the vapors would be captured in a plastic bag. The vapors would cool to a clear liquid, highly alcoholic substance.

37.    Corrections officers sometimes found the fermenting alcohol within the unit. However, they did not always dispose of the alcohol they found, often turning a blind eye to the infraction.

38.    This prison-produced alcohol significantly impaired the faculties and judgment of those who consumed even small quantities of it.

39.    Many of the USP Terre Haute prisoners involved in the production, marketing and consumption of this alcoholic concoction were incarcerated for violent crimes, had violent dispositions, and/or were members of prison gangs.

40.    Warden Bezy and certain BOP John or Jane Does Nos. 1-20 knew that this risk to inmate safety was particularly acute because the USP Terre Haute was significantly understaffed. At

most times, only a single corrections officer would be stationed in most Units of the facility,

often remaining inside the video surveillance rooms throughout the day. Many areas of the

Units, including inmate cells, were not under video surveillance. Patrols of the Units by

corrections officers were infrequent and sporadic. However, Warden Bezy and certain BOP

John and Jane Does Nos. 1-20 negligently failed to take requisite steps to increase the staffing of

corrections officers in the Units.

41.     As BOP personnel and corrections officers, BOP John or Jane Does Nos. 1-20 were

responsible for the day-to-day conditions and inmate safety at the USP Terre Haute. As BOP

corrections officers, they were also personally responsible for enforcing rules, regulations,

policies, procedures, and guidelines to maintain an orderly environment and to protect safety at

the inmate level at the USP Terre Haute.

42.     Inmate alcohol intoxication was a significant contributing factor to numerous incidents of

inmate-against-inmate violence at the USP Terre Haute between 2000 and 2006, including the

period of Plaintiff's incarceration, Warden Bezy's tenure, and the tenures of the BOP employees

identified as BOP John or Jane Does Nos. 1-20.

43.     Many of these incidents of inmate-against-inmate violence were unprovoked, random,

and directed at inmates who were completely sober.

44.     Warden Bezy, BOP John or Jane Does Nos. 1-20, and other BOP corrections officers and

employees at the USP Terre Haute saw first-hand the consequences of the failure to prevent

alcohol consumption in the facility and the failure to adequately protect inmates in the facility.

On or about February 27, 2005, an inmate at USP Terre Haute was viciously assaulted by several

inmates who were intoxicated by prison-made alcohol, out of sight and sound contact of

corrections officers, and thrown from an upper tier of the facility to the floor below, sustaining

life-threatening injuries. This incident, occurring only months prior to the assault on Plaintiff, provided incontrovertible evidence of the dangerous conditions existing at the facility.

45.     Prior to the assault on Plaintiff, Warden Bezy, BOP John and Jane Does Nos. 1-20, and other BOP corrections officers and employees at the USP Terre Haute knew that inmate production of alcohol and inmate alcohol abuse were pervasive problems at the USP Terre Haute and had contributed to numerous incidents of inmate-against-inmate violence at the USP Terre Haute, including many incidents that resulted in serious and even life threatening injuries to inmates.

46.     Prior to the assault on Plaintiff, Warden Bezy, BOP John or Jane Does Nos. 1-20, and other BOP corrections officers and employees knew that inmate production of alcohol and inmate alcohol consumption posed substantial risks to the safety of the general inmate population.

47.     Prior to the assault on Plaintiff, Warden Bezy and certain BOP John or Jane Does Nos. 1-20 negligently failed to ensure that staffing levels were appropriate for a maximum security prison with a substantial number of violent offenders in the general population. Their negligence in failing to ensure appropriate staffing in the USP Terre Haute was particularly egregious given the prevalence of inmate production, consumption and abuse of alcohol.

48.     Despite being fully aware of the extent and severity of the risk to inmate safety posed by inmate alcohol production, consumption, and abuse prior to the assault on Plaintiff, BOP officials, including Warden Bezy and BOP John or Jane Does Nos. 1-20, negligently failed to take appropriate steps to control the problem.

49.     Both the failure to take appropriate steps to control the problem of prisoner alcohol production, consumption, and abuse when fully aware of the risks associated with it, and the

failure to ensure appropriate staffing of security personnel constituted negligence on the part of Warden Bezy, BOP John or Jane Does Nos. 1-20, and other BOP employees and corrections officers.

50.     Such negligence led directly to the assault on Plaintiff and Plaintiff's injuries.

51.     On or about May 27, 2005, in the early evening, Plaintiff was walking in the "E-1 Unit" of the USP Terre Haute.  He was on his way to boil water for coffee.

52.     While on his way, another inmate whose name is unknown, Inmate John Doe No. 1, called Plaintiff over to a cell in the "E-1 Unit," and Plaintiff obliged.  In the cell was a second inmate, Inmate John Doe No. 2.

53.     When Plaintiff arrived at the cell, these two inmates attempted to engage Plaintiff in a conversation.

54.     Plaintiff observed that both inmates had been drinking, appeared to be extremely intoxicated and had glazed looks in their eyes.  Realizing they were intoxicated, Plaintiff offered to speak with them the following day when they were sober.  There were no corrections officers or other BOP personnel nearby.

55.     As Plaintiff attempted to leave the cell, Inmate John Doe No. 1 closed the door and restricted Plaintiff's only way out.

56.     Inmate John Doe No. 1 then grabbed Plaintiff from behind, and the two inmates proceeded to violently assault Plaintiff for approximately twenty to thirty minutes thereafter.

57.     Only one guard was on duty in the "E-1 Unit" that evening, and that guard was located downstairs from the room in which the assault took place, near the entrance to the "E-1 Unit".

58.     During the assault, Inmate John Doe No. 2 had Plaintiff restrained from behind with a choke hold, while Inmate John Doe No. 1 viciously beat Plaintiff's body and face and attempted

to "gouge out" Plaintiff's eyes. As Plaintiff struggled to keep Inmate John Doe No. 1 from extracting his eyes, the choke hold of Inmate John Doe No. 2 was compromising Plaintiff's ability to breathe. Believing he would die by strangulation unless he devoted his remaining strength to fighting off the choke hold, Plaintiff disengaged from his struggle with Inmate John Doe No. 1. Relieved of Plaintiff's resistance, Inmate John Doe No. 1 dug his fingers deeply into Plaintiff's eye sockets, detaching Plaintiff's right eye from the optic nerve and severely scratching Plaintiff's left eye.

59.    Plaintiff was then able to extricate himself enough from the choke hold of Inmate John Doe No. 2 to lunge forward, closer to the door. One of the assailants opened the door and fled, and the altercation between Plaintiff and the remaining assailant moved outside of the room.

60.    Corrections officers eventually arrived on the scene while the remaining assailant was still beating Plaintiff.

61.    Throughout the assault, as Plaintiff struggled to defend himself, Plaintiff screamed for help from inside the cell, but no corrections officers or other BOP personnel responded. The cell in which the assault occurred was not under video surveillance.

62.    At the time of the incident, Plaintiff needed to be airlifted to a hospital in Indianapolis, Indiana. As a result of the assault on Plaintiff at the hands of these intoxicated inmates, Plaintiff suffered permanent damage to his eyes. Plaintiff was hospitalized in Indianapolis for a week before returning to the USP Terre Haute.

63.    Even after his return, Plaintiff required continuing medical care from doctors and vision specialists in Indianapolis. These physicians ultimately determined that the vision in Plaintiff's right eye was very unlikely to return and recommended that the eye be removed. On or about June 2005, Plaintiff's right eye was surgically removed.

64.     Plaintiff also suffered massive damage to his left eye, which was severely scratched during the assault.  The vision in his left eye remains significantly impaired to this day.

65.     Upon returning to the USP Terre Haute, Plaintiff needed to be in confinement because of his medical condition for nearly the entire period until his release in December of 2005.  Because the presence of light caused Plaintiff excruciating pain, Plaintiff spent the first several months of his confinement in complete darkness.

66.     As a result of his extensive injuries, Plaintiff was unable to walk and was confined to a wheelchair for a period of approximately three months after the assault.  In addition to the damage to his eyes, Plaintiff sustained severe bodily injuries and was bleeding from the ears. Plaintiff has continuing back and neck pain from the assault.

67.     Plaintiff also suffered and continues to suffer great emotional pain and distress as a result of the assault, requiring continuing psychiatric care and treatment.  He has suffered persistent nightmares and depression as a direct result of this violent assault for which he seeks continuing psychiatric counseling.

### Count One – Negligence

68.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 67 as if fully set forth herein.

69.     By virtue of his position as Warden of the USP Terre Haute, with responsibility for and control over the custody, care, protection and safety of inmates at the USP Terre Haute, Warden Bezy owed a duty of care to Plaintiff.

70.     By virtue of their positions as BOP corrections officers with responsibility for and control over the custody, care, protection and safety of inmates at the USP Terre Haute, BOP John or Jane Does Nos. 1-20 owed a duty of care to Plaintiff.

71.     The duty of care owed by Warden Bezy and BOP John or Jane Does Nos. 1-20 to Plaintiff included a duty to maintain a safe and secure prison environment.

72.     During the course of Plaintiff's incarceration at the USP Terre Haute, Warden Bezy negligently breached the duty of care owed to Plaintiff by failing to provide adequate levels of security staffing in the prison.

73.     During the course of Plaintiff's incarceration at the USP Terre Haute certain BOP John or Jane Does Nos. 1-20 who had the responsibility and authority to determine and ensure appropriate levels of security staffing negligently breached the duty of care owed to Plaintiff by failing to provide adequate levels of security staffing in the prison.

74.     On the evening of the assault on Plaintiff, only one corrections officer was on duty in a unit housing more than 100 inmates.  This low level of security staffing was typical for the period of Plaintiff's incarceration.

75.     As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to provide adequate levels of security staffing in the USP Terre Haute in light of the risks known to them, Plaintiff was the victim of a vicious assault at the hands of two intoxicated inmates lasting between twenty and thirty minutes.

76.     As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to provide adequate levels of security staffing in the USP Terre Haute in light of the risks known to them, Plaintiff suffered serious bodily harm, including the complete loss of vision in his right eye, significant impairment of vision in his left eye, and chronic neck and back pain.

77.     As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to provide adequate levels of security staffing in the USP Terre Haute in light

- 13 -

of the risks known to them, Plaintiff has suffered pain, bodily injury, mental anguish, and permanent disability with resulting loss of income, and will continue to suffer pain, mental anguish and permanent disability in the future with resulting loss of income.

### Count Two – Negligence

78.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 77 as if fully set forth herein.

79.    By virtue of his position as Warden of the USP Terre Haute, with responsibility for and control over the custody, care, protection and safety of inmates at the USP Terre Haute, Warden Bezy owed a duty of care to Plaintiff.

80.    By virtue of their positions as BOP corrections officers with responsibility for and control over the custody, care, protection and safety of inmates at the USP Terre Haute, BOP John or Jane Does Nos. 1-20 owed a duty of care to Plaintiff.

81.    The duty of care owed by Warden Bezy and BOP John or Jane Does Nos. 1-20 to Plaintiff included a duty to maintain a safe and secure prison environment.

82.    During the course of Plaintiff's incarceration at the USP Terre Haute, Warden Bezy negligently breached the duty of care owed to Plaintiff by failing to take appropriate and necessary steps to control the known safety risks posed by inmate alcohol production, consumption, and abuse prior to Plaintiff's assault.

83.    During the course of Plaintiff's incarceration at the USP Terre Haute, BOP John or Jane Does Nos. 1-20 negligently breached the duty of care owed to Plaintiff by failing to take appropriate and necessary steps to control the known safety risks posed by inmate alcohol production, consumption, and abuse, and in fact by enabling such dangerous activity, prior to Plaintiff's assault.

84.    As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to take appropriate and necessary steps to control the known safety risks posed by inmate alcohol production, consumption, and abuse, Plaintiff was the victim of a vicious assault at the hands of two intoxicated inmates lasting between twenty and thirty minutes.

85.    As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to take appropriate and necessary steps to control the known safety risks posed by inmate alcohol production, consumption, and abuse, Plaintiff suffered serious bodily harm, including the complete loss of vision in his right eye, significant impairment of vision in his left eye, and chronic neck and back pain.

86.    As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to take appropriate and necessary steps to control the known safety risks posed by inmate alcohol production, consumption, and abuse, Plaintiff has suffered pain, bodily injury, mental anguish, and permanent disability with resulting loss of income, and will continue to suffer pain, mental anguish and permanent disability in the future with resulting loss of income.

## Count Three – Negligence

87.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 86 as if fully set forth herein.

88.    By virtue of his position as Warden of the USP Terre Haute, with responsibility for and control over the custody, care, protection and safety of inmates at the USP Terre Haute, Warden Bezy owed a duty of care to Plaintiff.

89.    By virtue of their positions as BOP corrections officers with responsibility for and control over the custody, care, protection and safety of inmates at the USP Terre Haute, BOP John or Jane Does Nos. 1-20 owed a duty of care to Plaintiff.

90.     The duty of care owed by Warden Bezy and BOP John or Jane Does Nos. 1-20 to Plaintiff included a duty to assign Plaintiff to a BOP facility commensurate with his security profile.

91.     During the course of Plaintiff's incarceration at the USP Terre Haute, Warden Bezy negligently breached the duty of care owed to Plaintiff by assigning Plaintiff, or by causing Plaintiff to be assigned, to the general population of a maximum security BOP facility, even though at no point during Plaintiff's detention did his security profile or basis for detention warrant such an assignment.

92.     During the course of Plaintiff's incarceration at the USP Terre Haute, certain BOP John or Jane Does Nos. 1-20 negligently breached the duty of care owed to Plaintiff by assigning Plaintiff, or by causing Plaintiff to be assigned, to the general population of a maximum security BOP facility, even though at no point during Plaintiff's detention did his security profile or basis for detention warrant such an assignment.

93.     As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to properly assign Plaintiff to a BOP facility commensurate with his security profile and basis for detention, Plaintiff was the victim of a vicious assault at the hands of two intoxicated general population inmates lasting between twenty and thirty minutes.

94.     As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to properly assign Plaintiff to a BOP facility commensurate with his security profile and basis for detention, Plaintiff suffered serious bodily harm, including the complete loss of vision in his right eye, significant impairment of vision in his left eye, and chronic neck and back pain.

95.     As a direct and proximate result of Warden Bezy's and certain BOP John or Jane Does Nos. 1-20 failure to properly assign Plaintiff to a BOP facility commensurate with his security profile and basis for detention, Plaintiff has suffered pain, bodily injury, mental anguish, and permanent disability with resulting loss of income, and will continue to suffer pain, mental anguish and permanent disability in the future with resulting loss of income.

### Prayer for Relief

WHEREFORE, Plaintiff prays a judgment against Defendant and the following relief:

A.     A judgment of compensatory damages;

B.     The costs of this suit, including reasonable attorneys' fees; and

C.     Such other and further relief as the Court deems just and proper.


Respectfully Submitted:


By: _____

James E. Rocap, III (D.C. Bar No. 912840)
Marc Levin (D.C. Bar No. 482855)
Suzanne Dallas Reider (DC Bar No. 499253)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: (202) 429-3000
Fax: (202) 429-3902

Philip Fornaci (D.C. Bar No. 434824)
Washington Lawyers' Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
Phone: (202) 319-1000
Fax: (202) 319-1010


May 16, 2008

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Manuel Pupo-Leyvas | United States of America |

| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES)    U.S. | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| James E. Rocap, III<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC  20036<br>(202) 429-3000 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

◉ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E.** *General Civil (Other)*    **OR**    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. §2671 et seq.  Plaintiff suffered serious bodily harm as a result of defendant's negligence.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** [_____]   Check YES only if demanded in complaint <br> **JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE  5/16/08   SIGNATURE OF ATTORNEY OF RECORD   _[signature]_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.