## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Manuel Pupo-Leyvas,             ) <br>             ) <br>        Plaintiff,     ) <br>             ) <br>        v.          ) <br>             ) <br> United States of America,    ) <br>             ) <br>             ) <br>       Defendant.    ) | Civil Action No. 08- 0851(RBW) <br> ECF |

## UNOPPOSED MOTION TO TRANSFER VENUE IN LIEU OF AN ANSWER

Defendant, United States of America, by and through undersigned counsel, respectfully requests this Court to transfer Plaintiff's law suit to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice. The grounds for this Motion are set forth in the accompanying memorandum in support. Pursuant to Local Rule 7(m), the parties have conferred via telephone and opposing counsel do not oppose this motion.

Respectfully submitted,


JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 305-4851


Dated:  August 18, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Manuel Pupo-Leyvas, )<br><br>Plaintiff, )<br><br>v. )<br><br>United States of America, )<br><br>Defendant. ) | Civil Action No. 08- 0851(RBW)<br>ECF |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO TRANSFER VENUE

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1404(a) the Plaintiff's Federal Tort Claims Act ("FTCA") law suit should be transferred to the Southern District of Indiana, for the convenience of the parties and witnesses and in the interest of justice. Plaintiff contends that the Defendant, the United States, is responsible for the acts and omissions of the Federal Bureau of Prisons ("BOP") employees regarding the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), where he was previously incarcerated and sustained injuries. Since May 21, 2008, Plaintiff has had a *Bivens* suit pending in the Southern District of Indiana based on the same set of facts and circumstances alleged here. *See Bivens* Complaint, attached hereto as Exh. A, for ease of reference.[1] Therefore, the District Court for the Southern District of Indiana is already familiar

---

[1] Plaintiff initially filed his *Bivens* complaint in the United States District Court for the District of Arizona. Upon the Government's Motion to Transfer Venue, that matter was transferred to the United States District Court for the Southern District of Indiana. *See* Southern District of Indiana's Docket Sheet for the *Bivens* matter (Dkt. Nos. 10-17), attached hereto as Exh. B, for ease of reference.

with the events, facts and circumstances of this case. Furthermore, all of the witnesses, relevant documents, and other potential evidence, as well as the hospital where the Plaintiff received treatment are all located in Indiana.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's states that he is a refugee from Cuba who currently resides in Washington, D.C. *Id.* ¶ 11. Plaintiff concedes that he was an inmate at USP Terre Haute "at all times relevant to the allegations" in his Complaint. *Id.* Specifically, Plaintiff claims Defendant is responsible for injuries he sustained during his incarceration at the United States Penitentiary, Terre Haute ("USP Terre Haute"). Plaintiff's Complaint ("Compl") ¶ 3.

Plaintiff contends that he was assaulted by two other inmates during his incarceration. Compl ¶¶ 53-61. Plaintiff states that, as a result of the assault, he sustained injuries. Id. ¶¶ 62-67. He then alleges that Mark A. Bezy, a former warden, and "BOP John and Jane Does" at USP Terre Haute, were "fully aware of the extent and severity of the risk to inmate safety posed by inmate alcohol production, consumption, and abuse prior to the assault on Plaintiff . . . and negligently failing to take appropriate steps to control the problem." Compl ¶¶ 47 and 48. Plaintiff claims that Defendant, therefore, should be held liable for the actions of Mr. Bezy and BOP's officers. *Id.* ¶ 12.

On May 27, 2005, the date that Plaintiff alleges he was assaulted by two inmates, Mr. Bezy was indeed the warden at USP Terre Haute. Plaintiff was released from federal custody to parole on December 12, 2005. *See* Declaration of Michael S. Romano (Romano Decl.), attached as Exh. 1 of the Government's Motion to Transfer Venue in the *Bivens* matter, attached here to as Exh. C. Undersigned counsel has been advised that Mr. Bezy was the warden at USP Terre Haute

2

until his retirement in September, 2006. He later relocated to Pinal County, Arizona. It is undisputed that all of the events that gave rise to this litigation occurred in Terre Haute, Indiana. Compl ¶ 11. The relevant documentary evidence is located in Indiana. A number of USP Terre Haute employees responded to the event on May 27, 2005 that gave rise to the instant Complaint. *See* Romano Decl., attached as Exh. C. Approximately ten of those witnesses are still employed by BOP and are residents of Indiana who potentially will have to be transported to the District of Columbia for discovery and/or trial at taxpayers' expense if the case is not transferred. *See id.* The Plaintiff was also treated at a hospital in Indianapolis, Indiana for his injuries. Compl ¶ 62. Thus, the medical records are located in Indiana, and presumably, most or all of the treating health care providers are located in Indiana.

Plaintiff also alleges that USP Terre Haute was "significantly understaffed," that "inmate intoxication was a contributing factor to numerous incidents of inmate-against-inmate violence" at the facility, and that Mr. Bezy and other BOP staff were aware of and responsible for these conditions. Compl ¶¶ 4, 5, 7. Therefore, a significant amount of additional discovery, regarding conditions at the facility prior to the incident involving Plaintiff, will also need to be conducted. The relevant documents and most of the key witnesses for that discovery are also located in Terre Haute, Indiana.

### III. LEGAL ARGUMENT

Plaintiff bases his claim in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, made applicable to the United States as the defendant, pursuant to 28 U.S.C. § 1346(b). *See* Compl ¶¶ 1, 9-10. Venue for the FTCA is controlled by 28 U.S.C. § 1402(b), which provides that "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of

3

this title may be prosecuted only in the judicial district where plaintiff resides or wherein the act or omission complained of occurred."

Here, while the District of Columbia may seem like the proper venue for Plaintiff's tort claim because he now lives here, it is not where the acts or omissions took place. Indeed, as noted above, Plaintiff concedes that at all times relevant to his Complaint, he was incarcerated at Terre Haute. Compl ¶ 11. Accordingly, venue is more appropriate in the Southern District of Indiana, where Plaintiff has filed another complaint based on the same set of facts and circumstances. See Exh. A. Thus, the matter should be transferred to the Southern District of Indiana. *See Zakiya v. United States*, 267 F. Supp. 2d 47, 59 (D.D.C. 2003) ("Because none of the operative events that constitute the gravamen of plaintiff's claims took place in the District of Columbia, the Court concludes that venue in this district is improper.").

The federal venue statute, 28 U.S.C. § 1404, grants the courts broad powers to transfer a case to any other district in which it might have been brought "for the convenience of parties and witnesses, and in the interest of justice." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). The statute allows the courts broader discretion to transfer cases upon a lesser showing of inconvenience than was previously required under the doctrine of *forum non conveniens*. *Id.* The purpose of the statute "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). Here, the Southern District of Indiana is the more convenient forum because all of the relevant events that form the factual predicate for Plaintiff's claims occurred in that district, and most of the witnesses reside in Indiana. Additionally, a *Bivens* matter based on

4

the same facts and circumstances is already pending in the District Court for the Southern District of Indiana.

Section 1404(a) of the statute has two requirements: (1) the district to which the defendant is seeking a transfer must be a place where the action "might have been brought," and (2) the "convenience of parties and witnesses, in the interest of justice" must favor transfer. *Liban v. Churchey Group II, UC,* 305 F.Supp.2d 136 (D.D.C. 2004). *See also Van Dusen v. Barrack,* 376 U.S. at 616 , *Trout Unlimited v. U.S. Dept. Of Agriculture,* 944 F. Supp. 13 (D.D.C. 1996). In this case, both requirements are met.

### A.     Plaintiff Could Have Brought this Action in Indiana

Here, it is undisputed that venue in FTCA actions is controlled by 28 U.S.C. § 2671, as applied to the Untied States via Section 1402(b) (*see* Compl ¶ 1, 9-10), which permits a plaintiff to bring suit ". . . wherein the act or omission complained of occurred." Therefore, Plaintiff could have brought suit in the Southern District of Indiana. Instead, he chose to bring this action in the District of Columbia, where he currently resides. However, pursuant to the statute, venue is also proper in the Southern District of Indiana, the judicial district in which all of the events or omissions giving rise to Plaintiff's claims occurred, involving a the plethora of witnesses and documents located there. Therefore, he could have chosen to file suit in the Southern District of Indiana and the first requirement for transfer pursuant to § 1404(a) has been met.

### B.     The Southern District of Indiana Is the More Convenient Forum, and Transfer Would Serve the Interests of Justice.

Courts consider a number of private and public interest factors when determining whether the preference accorded to the plaintiff's choice of forum is outweighed by the burden of litigating in an

inconvenient forum. *See Southern Utah Wilderness Alliance v. Norton,* 315 F.Supp.2d 82 (D.D.C. 2004). The factors that are relevant in this matter include: (1) the convenience and costs associated with obtaining attendance of willing witnesses; (2) the ease of access to sources of proof; (3) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (4) the connection between the plaintiff's cause of action and the forum; (5) whether there is a local interest in having the controversy decided in the forum; (6) the plaintiff's choice of forum; (7) whether unnecessary problems in conflict of laws can be avoided; (8) the existence of administrative difficulties resulting from court congestion; and (9) the unfairness of imposing jury duty on citizens in an unrelated forum. *See id.; BCCI Holdings (Luxembourg) Societe Anonyme v. Mahfouz,* 828 F. Supp. 92 (D.D.C. 1993) . In this case, all of the factors demonstrate that the Southern District of Indiana is the more convenient forum, and a transfer to that district would serve the interests of justice.

1.    It Would Be More Convenient for the Witnesses, Cost Effective, and Efficient for the Parties to Litigate this Case in Indiana.

The convenience to the witnesses is often recognized as the most critical factor to be considered in ruling on a motion to transfer venue pursuant to § 1404(a). *Dean v. Eli Lilly & Co,* 515 F. Supp. 2d 18 (D.D.C. 2007); *Mathis v. Geo Group, Inc,* 535 F. Supp.2d 83. The Supreme Court also identifies efficiency as an important component in establishing venue. *Rumsfeld v. Padilla,* 542 U.S. 426 (2004) (noting "Venue principles, however, center on the most convenient and efficient forum for resolution of a case, and on the placement most likely to minimize forum shopping."). As set forth above, approximately ten current and former employees, including nine correctional officers and a nurse, will most likely be called to testify about the events in question. Those witnesses all live

in Indiana, and they may be forced to travel to the District of Columbia for trial if the case is not transferred. *See* Exh. A, Romano Decl. Defendant may also be forced to bear the costs associated with that travel. Plaintiff's attorneys can easily cover the cost of his travel to Indiana. Presumably, most or all of the providers who rendered medical care to Plaintiff in Indianapolis also reside in Indiana. Accordingly, Defendant would have to bear the additional cost of their travel expenses as well. All of these expenses could be avoided if this case is transferred to Indiana.[2] Furthermore, it is more efficient to litigate this matter in Indiana because of the instant access to witnesses, documents, and direct relationship Indiana has concerning the actions alleged by the Plaintiff. In addition, the court in the Southern District of Indiana is already familiar with this matter. Accordingly, the first factor favors a transfer to Indiana, as the principles of convenience, efficiency, and cost management favor transfer.

2.   Virtually All Sources of Proof Are Located in Indiana.

As noted above, all of the events at issue in the lawsuit occurred at USP Terre Haute, and all of the documentary evidence is located in Indiana. Plaintiff has also alleged that Mr. Bezy and certain BOP officers had knowledge of certain conditions at the prison and that a previous inmate-on-inmate attack occurred prior to the events involving Plaintiff. Compl ¶¶ 42-47. All of that evidence is also located in Indiana. Further, Plaintiff alleges that the correctional officer on duty in his unit could not properly visualize the inmates' activities in their cells. *Id.* ¶ 54. Discovery on this issue may require viewing the facilities, which would be accomplished more easily if the case is transferred to Indiana. Plaintiff was treated for his injuries at a hospital in Indiana, and that evidence is likewise located in

---

[2] The defense of this case would be transferred to an Assistant United States Attorney in Indiana if the Court grants Defendant's instant Motion

Indiana. Should the Court not grant this motion, the tax payer would be forced to shoulder the costs of travel for many witness to the District of Columbia, who reside in Indiana. Additionally, government counsel who are located in the District of Columbia would have to travel to Indiana for conducting discover. Therefore, the second factor favors a transfer to Indiana.

3.    The Courts Here Could Not Compel the Attendance of Unwilling Witnesses.

Some of the witnesses, such as medical personnel from the Hospital where Plaintiff was treated, are not employed by the BOP. The majority of the non-BOP-employee witnesses presumably reside in Indiana, beyond the subpoena power of this Court. The interest of justice would require that the parties have the opportunity to interview and depose the non-employee witnesses, and the court in the Southern District of Indiana would have jurisdiction over such persons. Thus, the third factor favors a transfer to Indiana.

4.    Indiana has a Stronger Connection to the Plaintiff's Cause of Action.

As stated throughout this Motion, all of the relevant events occurred in Indiana. Plaintiff became a resident of Washington, D.C. after the alleged events took place. Plaintiff agrees that he was an inmate at USP Terre Haute "at all times relevant to the allegations." Compl ¶ 11. Further, all the witnesses, relevant documents and evidence, are all located in Indiana. Accordingly, the fourth factor favors a transfer to Indiana.

5.    The Local Interest in Having this Controversy Decided Here is Not Compelling.

Currently, the Plaintiff is a resident of this District, however, he moved here after the alleged events took place and he was paroled in December 2005. The wrongful conduct the Plaintiff alleges was also confined to the BOP facility in Terre Haute (see Compl generally), and has no connection to prison conditions in the District of Columbia. Therefore, the local interest in redressing his alleged

injuries here are not substantial or compelling.  The fifth factor also favors a transfer to Indiana.

6.    Deference to the Plaintiff's Choice of Forum Can be Mitigated.

Traditionally, courts have deferred to Plaintiff's choice of forum. *Sierra Club v. Flowers,* 276

F.Supp.2d 62 (D.D.C. 2003).  Deference to the Plaintiff is mitigated however, if the choice of forum

has, no meaningful ties to the controversy and no particular interest in the parties or subject matter,

in an effort to avoid forum shopping. *See generally*, *Rumsfeld v. Padilla,* 542 U.S. 426 (2004).  The

District of Columbia's interest in this matter is insubstantial and lacks any connection to the events

that led to the lawsuit.  In view of the totality of the circumstances, Plaintiff's choice of forum should

be mitigated against the abundance of factors rendering transfer to Indiana more convenient,

expeditious, and cost effective.  Therefore, the sixth factor favors a transfer to Indiana.

7.    Problems in Conflict of Laws Can Be Avoided by Transferring the Case to Indiana.

Terre Haute, Indiana is located in the Seventh Circuit and Plaintiff's chosen forum is in the

D.C. Circuit.  It is currently unknown whether there are material differences in the laws of Indiana

and the laws of the District of Columbia relative to the claims and defenses in this case, but any

potential problems could be entirely avoided by transferring the case to the forum where all of the

events occurred.  Thus, the seventh factor favors a transfer to Indiana.

8.    The Court Docket in the District of Columbia Is More Congested than the Southern
District of Indiana's Docket.

Plaintiff will face less administrative difficulties resulting from general court congestion if this

motion is granted.  In the District Court for the District of Columbia, the median time interval for

cases to proceed to trial is 43 months. *See* Table C-5, U.S. District Courts - Median Time Intervals

From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2007, found at www.uscourts.gov., attached as Exh. D. In the Southern District of Indiana, the median time interval is 23.4 months. *Id.* Accordingly, the eighth factor favors a transfer to Indiana.

9.    It Would Be Unfair to Impose Jury Duty on District of Columbia Citizens in the Matter.

The insubstantial local interest in deciding this controversy here is outweighed by the fact that all documents related to this matter are in Indiana, the witnesses reside in Indiana, and all of the events in question took place in Indiana. The citizens of Indiana would have a strong interest in being informed about prison conditions in their jurisdiction. Jurors in the District of Columbia should not be forced to take time away from their families and work to decide a case involving a Plaintiff who is alleging that his he suffered injuries in a prison almost 700 miles away. Therefore, the ninth factor favors a transfer to Indiana.

## IV. CONCLUSION

The analysis of the factors set forth above strongly demonstrates that the Souther District of Indiana, and not the District of Columbia, would be most convenient forum for the parties to litigate this matter and that a transfer of venue would serve the interests of justice. Hence, Defendant respectfully requests an Order from this Court transferring this matter to the United States District Court for the Southern District of Indiana.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 305-4851

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendant's Motion to Transfer Venue

In Lieu of an Answer was served on parties of record, on this 18th day of August 2008, via the

Court's ECF system.

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 305-4851

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Manuel Pupo-Leyvas, an individual

**DEFENDANTS**

Mark A. Bezy, an individual

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Washington, D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:  PINAL COUNTY, ARIZONA
(IN U.S. PLAINTIFF CASES ONLY)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Steptoe & Johnson LLP
201 E. Washington, Suite 1600
Phoenix, Arizona 85004
(602) 257-5200

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

X 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | X 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State |  | ☐ 5 |
| Citizen or Subject of a Foreign Country | X 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **Personal Injury** | **Personal Injury** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/ DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statute |
| ☐ 290 All Other Real Property | X 450 Other Civil Rights | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

X 1  Original Proceeding    ☐ 2  Removed from State Court    ☐ 3  Remanded from Appellate Court    ☐ 4  Reinstated or Reopened    ☐ 5  Transferred from another district (specify)    ☐ 6  Multidistrict Litigation    ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. § 2201 et seq.   Redress of rights secured by Eighth Amendment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Unspecified

CHECK YES only if demanded in complaint:
JURY DEMAND:  X YES  NO

## VIII. RELATED CASES(S) IF ANY (See instructions):   JUDGE                      DOCKET NUMBER

DATE: May 22, 2007    David R. Nelson          SIGNATURE OF ATTORNEY OF RECORD /s/ David R. Nelson

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____



GOVERNMENT
EXHIBIT
A

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS–44
## Authority For Civil Cover Sheet

The JS–44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs – Defendants.** Enter name (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and the attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS–is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section V below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of JS–44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

1  STEPTOE & JOHNSON LLP
   201 East Washington Street
2  Suite 1600
   Phoenix, Arizona 85004-2382
3  Telephone: (602) 257-5200
   Facsimile: (602) 257-5299
4
5  David R. Nelson (017009)
   Attorney for Plaintiff
6
7              UNITED STATES DISTRICT COURT
8                 DISTRICT OF ARIZONA
9
   MANUEL PUPO-LEYVAS, an              )
10 individual,                        )   No.
                                      )
11          Plaintiff,                )
                                      )
12    vs.                             )   COMPLAINT AND DEMAND FOR
                                      )   JURY TRIAL
13 MARK A. BEZY, in his individual    )
   capacity and official capacity as Warden, )
14 United States Penitentiary Terre Haute, )
                                      )
15          Defendant.                )
                                      )

16      Plaintiff Manuel Pupo-Leyvas alleges as follows:

17                    **Nature of the Action**

18      1.     This is a civil rights action brought pursuant to *Bivens v. Six Unknown*

19 *Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.

20 2d 619 (1971) to redress deprivations of rights secured by the Eighth Amendment of the

21 United States Constitution.

22      2.     The allegations in this Complaint are based on the personal recollection of

23 Manuel Pupo-Leyvas ("Plaintiff") and are alleged on information and belief.

24      3.     Plaintiff was incarcerated in the United States Penitentiary Terre Haute

25 ("USP Terre Haute") prison complex from approximately March 2003 until December

26 2005.   This action arises out of the exceptionally and unconstitutionally dangerous

27 conditions that existed in the USP Terre Haute during the period of Plaintiff's detention,

28 conditions about which Warden Mark A. Bezy ("Defendant") was clearly cognizant and

1    for which he was personally responsible. These conditions directly resulted in a brutal,

2    unprovoked attack on Plaintiff by his fellow inmates, resulting in disabling and

3    permanent physical and psychological injuries to Plaintiff.

4        4.    During all relevant times, at the USP Terre Haute, there was a thriving

5    economy in highly potent alcohol that was produced, marketed, consumed and abused

6    by many inmates. The ease with which inmates in a high security facility – many of

7    whom are incarcerated for violent crimes and/or belong to gangs – could become

8    intoxicated created a substantial risk of prisoner-against-prisoner violence. There were

9    numerous incidents of serious violence perpetrated by intoxicated prisoners during

10   Defendant's tenure as Warden of the USP Terre Haute. Many of these incidents were

11   random and unprovoked, and many involved victims who did not consume any alcohol.

12       5.    At all times relevant to this complaint, the number of corrections officers

13   available to prevent violence among inmates at the USP Terre Haute was clearly

14   inadequate.

15       6.    Plaintiff was the victim of a vicious, unprovoked assault at the hands of at

16   least two intoxicated inmates during his incarceration. The attack resulted in serious

17   physical and emotional injuries to Plaintiff and has left him blind in his right eye and

18   visually impaired in his left eye. Plaintiff was assaulted for at least twenty minutes

19   before correctional officers intervened.

20       7.    The availability of prisoner-made alcohol and the pervasiveness of

21   prisoner alcohol abuse, combined with inadequate staffing levels, constituted a serious

22   and palpable threat to inmate safety at USP Terre Haute. Defendant was aware of these

23   conditions for several months prior to the brutal attack on the Plaintiff. By allowing the

24   production of, and black market in, prisoner-distilled alcohol, Defendant was

25   deliberately indifferent to a substantial risk of serious harm to Plaintiff in violation of

26   Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

27

28

Doc. #529886 v.1

1

**Jurisdiction and Venue**

2    8.    This action is authorized by *Bivens v. Six Unknown Named Agents of*
3    *Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971),
4    and by 28 U.S.C. §§ 2201, 2202, to redress deprivations of rights secured by the Eighth
5    Amendment of the United States Constitution.  Original jurisdiction is conferred on this
6    Court by 28 U.S.C. § 1331.

7    9.    Venue is proper under 28 U.S.C. § 1391(b).

8

**Parties**

9    10.    Manuel Pupo-Leyvas is an adult individual.  Mr. Pupo-Leyvas arrived in
10    the United States in May 1980 as a political refugee from Cuba as part of the Mariel
11    boat lift.  Mr. Pupo-Leyvas currently resides in Washington, D.C.  At all times relevant
12    to the allegations herein, Mr. Pupo-Leyvas was an inmate incarcerated at USP Terre
13    Haute.

14    11.    Defendant Mark A. Bezy is an adult individual, a citizen of the United
15    States, and a resident of Pinal County, Arizona.  At all times relevant to the allegations
16    herein, Defendant Bezy was the Warden of the Terre Haute Federal Correctional
17    Complex in Terre Haute, Indiana, which included the USP Terre Haute.  Defendant
18    Bezy is sued in his official and individual capacities.

19

**Material Facts**

20    12.    Plaintiff was incarcerated at the Terre Haute Federal Correctional
21    Complex from approximately March 2003 through December 2005, initially in the
22    custody of the INS in connection with deportation proceedings and then in Bureau of
23    Prisons custody for violation of the conditions of his parole, stemming from a 1982
24    property crime in the District of Columbia.

25    13.    In 2001, by order of Congress, the D.C. prison complex in Lorton,
26    Virginia was closed, and the Bureau of Prisons was authorized to house D.C. Code
27    offenders in any facility in the country.  The Bureau of Prisons kept Plaintiff in the USP
28    Terre Haute, where the actions giving rise to this complaint occurred.

14.    The Terre Haute Federal Correctional Complex contains two main facilities: the medium security Federal Correctional Institution ("FCI Terre Haute") and the high-security USP Terre Haute.

15.    Upon his arrival at the Terre Haute Federal Correctional Complex, Plaintiff was initially housed in the "I Unit" of the United States Penitentiary. Approximately six months later, Plaintiff entered the general population of the USP Terre Haute and was housed in the "K Unit". In or around March of 2005, Plaintiff was moved to the "E-1 Unit" of the new USP Terre Haute facility.

16.    During his time in the USP Terre Haute, Plaintiff was not a member of a gang, did not drink alcohol or use illegal drugs, and was not subject to any disciplinary action. While confined in USP Terre Haute, Plaintiff worked in the kitchen and in the law library tutoring fellow inmates who were working towards their GEDs.

17.    Throughout the period of Plaintiff's detention at the USP Terre Haute, prisoners produced and sold to other prisoners an extremely potent bootleg alcohol.

18.    To make the bootleg alcohol, prisoners obtained large quantities of seemingly innocuous food products, such as sugar, tomato paste, ketchup, and orange juice from locations throughout the prison facility, including the kitchen and the commissary.

19.    USP Terre Haute prisoners often acquired the necessary ingredients for the alcohol directly from prison personnel, including kitchen workers and prison guards.

20.    Some prison guards at the USP Terre Haute sold ingredients for the alcohol to inmates, with knowledge that the ingredients would be used for the production of alcohol.

21.    The ingredients were mixed together and allowed to ferment in containers. Once the ingredients had sufficiently fermented, it would be heated and the vapors would be captured in a plastic bag. The vapors would cool to a clear liquid, highly alcoholic substance.

Doc. #529886 v.1

22. This prison-produced alcohol significantly impaired the faculties and judgment of those who consumed even small quantities of it.

23. Many of the USP Terre Haute prisoners involved in the production, marketing and consumption of this alcoholic concoction were incarcerated for violent crimes, had violent dispositions, and/or were members of prison gangs.

24. Defendant knew that this risk to inmate safety was particularly acute because the USP Terre Haute was significantly understaffed. At most times, only a single corrections officer would be stationed in most Units of the facility, often remaining inside the video surveillance rooms throughout the day. Each USP Terre Haute Unit typically housed over 100 inmates. Many areas of the Units, including inmate cells, were not under video surveillance. Patrols of the Units by corrections officers were sporadic.

25. As Warden, Defendant was personally responsible for conditions and inmate safety at the USP Terre Haute and for providing a safe and secure environment. As Warden, Defendant was also personally responsible for appropriate staffing levels of corrections officers to ensure inmate safety. As Warden, Defendant was also personally responsible for enforcing rules, regulations, policies, procedures and guidelines to maintain an orderly environment and to protect inmate safety at the institutional level at USP Terre Haute.

26. Inmate alcohol intoxication was a contributing factor to numerous incidents of inmate-against-inmate violence at the USP Terre Haute between the 2000 and 2006, including the period of Plaintiff's incarceration and Defendant's tenure as Warden.

27. Many of these incidents of inmate-against-inmate violence were unprovoked, random, and directed at inmates who were completely sober.

28. Defendant saw first-hand the consequences of the failure to prevent alcohol consumption in the facility and the failure to adequately protect inmates in the facility. On or about February 27, 2005, when Defendant served as Warden, an inmate

Doc. #529886 v.1

1   at USP Terre Haute was viciously assaulted by several inmates who were intoxicated by

2   prison-made alcohol, out of sight and sound contact of corrections officers, and thrown

3   from an upper tier of the facility to the floor below, sustaining life-threatening injuries.

4   This incident, occurring only months prior to the assault on Plaintiff, provided

5   incontrovertible evidence of the dangerous conditions existing at the facility.

6          29.    Prior to the assault on Plaintiff, Defendant knew that inmate intoxication

7   was a significant contributing factor to numerous incidents of inmate-against-inmate

8   violence at the USP Terre Haute, including many incidents that resulted in serious and

9   even life threatening injuries to inmates.

10         30.    Prior to the assault on Plaintiff, Defendant knew that inmate production of

11  alcohol and inmate alcohol consumption posed substantial risks to the safety of the

12  general inmate population.

13         31.    Defendant took no significant steps to increase staffing levels to improve

14  safety conditions.

15         32.    Despite being fully aware of the extent and severity of the risk to inmate

16  safety posed by inmate alcohol production and consumption prior to the assault on

17  Plaintiff, Defendant did not take appropriate steps to effectively control the problem.

18         33.    Rather, Defendant was deliberately indifferent to this substantial risk of

19  serious harm and failed to protect the general inmate population at USP Terre Haute,

20  including Plaintiff, from it.

21         34.    On or about the evening of May 27, 2005, in the early evening, Plaintiff

22  was walking in the "E-1 Unit" of the USP Terre Haute. He was on his way to boil water

23  for coffee.

24         35.    While on his way, another inmate, John Doe No. 1, called Plaintiff over to

25  a cell in the "E-1 Unit," and Plaintiff obliged. In the cell was a second inmate, John Doe

26  No. 2.

27         36.    When Plaintiff arrived at the cell, these two inmates attempted to engage

28  Plaintiff in a conversation.

Doc. #529886 v.1

37.    Plaintiff observed that both John Doe No. 1 and John Doe No. 2 had been drinking, appeared to be extremely intoxicated and had glazed looks in their eyes. Realizing they were intoxicated, Plaintiff offered to speak with them the following day when they were sober. There were no corrections officers nearby.

38.    As Plaintiff attempted to leave the cell, John Doe No. 1 closed the door and restricted Plaintiff's only way out.

39.    John Doe No. 2 then grabbed Plaintiff from behind, and the two inmates proceeded to violently assault Plaintiff for approximately twenty to thirty minutes thereafter.

40.    Throughout the assault, as Plaintiff struggled to defend himself, Plaintiff screamed for help from inside the cell, but no corrections officers responded. The cell in which the assault occurred was not under video surveillance.

41.    Only one guard was on duty in the "E-1 Unit" that evening, and that guard was located downstairs from the room in which the assault took place, near the entrance to the "E-1 Unit".

42.    During the assault, John Doe No. 2 had Plaintiff restrained from behind with a choke hold, while John Doe No. 1 viciously beat Plaintiff's body and face and attempted to "gouge out" Plaintiff's eyes. As Plaintiff struggled to keep John Doe No. 1 from extracting his eyes, the choke hold of John Doe No. 2 was compromising Plaintiff's ability to breathe. Believing he would die by strangulation unless he devoted his remaining strength to fighting off the choke hold, Plaintiff disengaged from his struggle with John Doe No. 1. Relieved of Plaintiff's resistance, John Doe No. 1 dug his fingers deeply into Plaintiff's eye sockets, detaching Plaintiff's right eye from the optic nerve and severely scratching Plaintiff's left eye.

43.    Plaintiff was then able to extricate himself enough from the choke hold of John Doe No. 2 to lunge forward, closer to the door. One of the assailants opened the door and fled, and the altercation between Plaintiff and the remaining assailant moved outside of the room.

Doc. #529886 v.1

44.    Shortly thereafter, prison guards arrived on the scene while the remaining assailant was still beating Plaintiff.

45.    As a result of the assault on Plaintiff at the hands of these intoxicated inmates, in addition to the permanent damage to his eyes, Plaintiff sustained severe bodily injuries and was bleeding from the ears.  Plaintiff needed to be airlifted to a hospital in Indianapolis, Indiana.

46.    Plaintiff was hospitalized in Indianapolis for a week before returning to the USP Terre Haute.  As a result of his extensive injuries, Plaintiff was unable to walk and was confined to a wheelchair for a period of approximately three months after the assault.

47.    Even after his return, Plaintiff required continuing medical care from doctors and vision specialists in Indianapolis.  These physicians ultimately determined that the vision in Plaintiff's right eye was very unlikely to return and recommended that the eye be removed.  On or about June 2005, Plaintiff's right eye was surgically removed.

48.    Plaintiff also suffered massive damage to his left eye, which was severely scratched during the assault.  The vision in his left eye remains significantly impaired to this day.

49.    Plaintiff needed to be in confinement because of his medical condition for nearly the entire period from his return to the USP Terre Haute until his release in December of 2005.  Because the presence of light caused Plaintiff excruciating pain, Plaintiff spent the first several months of his confinement in complete darkness.

50.    Plaintiff also suffered and continues to suffer great emotional pain and distress as a result of the assault, requiring continuing psychiatric care and treatment.

51.    The assault on Plaintiff would not have occurred but for the serious intoxication of John Doe No. 1 and John Doe No. 2 from prison-produced alcohol and the failure of Defendant to control the prison-production of alcohol and provide adequate security staffing to ensure his safety under these conditions.  Instead, the

Doc. #529886 v.1

1   assailants were extremely intoxicated from the consumption of inmate-produced
2   alcohol, which affected their judgment and inflamed their violent tendencies, all in an
3   environment lacking sufficient security.

4       52.    John Doe No. 1 and John Doe No. 2 were members of a prison gang.
5   Plaintiff had no personal relationship with his assailants. Plaintiff barely knew these
6   inmates, did not know their names and had only passing conversations with them prior
7   to the assault. Plaintiff had never been threatened by either John Doe No. 1 or John Doe
8   No. 2, nor had Plaintiff ever felt threatened by either man, including on the evening of
9   the assault.

10      53.    The assault on Plaintiff was not an isolated incident. It was representative
11  of the type of alcohol-related, inmate-against-inmate violence that was a regular
12  occurrence, had happened many times before at the USP Terre Haute, and was well
13  known by prison officials, including Defendant. This production of alcohol was openly
14  tolerated by Defendant, and the concomitant failure to provide minimally adequately
15  staffing by corrections officers created unreasonably dangerous conditions for Plaintiff
16  and for other inmates at the USP Terre Haute.

17      54.    The attack on Plaintiff was the predictable result of the substantial risk of
18  serious harm posed by the widespread availability, consumption and abuse of alcohol
19  among the general population at the USP Terre Haute and the failure to provide
20  adequate staffing to prevent alcohol production and consumption inside the facility and
21  protect inmates from unreasonable risk of violence. These were risks to which
22  Defendant was deliberately indifferent.

23                          **Eighth Amendment Violations**

24      55.    The allegations contained in paragraphs one through fifty-four of this
25  Complaint are incorporated by reference as if fully set forth herein.

26      56.    At all times relevant to the allegations herein, Defendant acted under color
27  of federal law.

28

- 9 -

Doc. #529886 v.1

1    57.    Defendant owed Plaintiff a duty under the Eighth Amendment of the
2  United States Constitution to protect him from violence at the hands of other inmates.

3    58.    Defendant knowingly subjected Plaintiff to a substantial risk of serious
4  harm – namely, a significantly understaffed environment in which violent inmates were
5  regularly consuming highly intoxicating alcohol and committing acts of violence against
6  other inmates, often unprovoked. In so doing, Defendant was deliberately indifferent to
7  Plaintiff's safety.

8    59.    Subjecting Plaintiff to the exceedingly dangerous conditions in the general
9  population of the USP Terre Haute constituted cruel and unusual punishment in
10  violation of the Eighth Amendment to the United States Constitution. Specifically,
11  Defendant violated his duty under the Eighth Amendment to protect Plaintiff from
12  attacks at the hands of other inmates.

13    60.    Defendant did not control the dangerous conditions posed by the pervasive
14  consumption and abuse of inmate-produced alcohol and the lack of security officers at
15  the USP Terre Haute. By not doing so, Defendant knowingly disregarded a substantial
16  risk of serious harm to Plaintiff in violation of the Eighth Amendment to the United
17  States.

18    61.    Defendant's deliberate indifference to, and knowing disregard of, the
19  dangerous conditions at the USP Terre Haute violated his duty under the Eighth
20  Amendment of the United States Constitution to protect Plaintiff.

21    **WHEREFORE**, Plaintiffs prays for judgment against Defendant and for the following
22  relief:

23  A.    A declaration that Defendant has violated the Eighth Amendment in the ways
24  described above;

25  B.    A judgment of compensatory and punitive damages, as determined by a jury;

26  C.    Award plaintiff punitive damages;

27  D.    The costs of this suit, including reasonable attorneys' fees; and

28

Doc. #529886 v.1

1         E.     Such other and further relief as the Court deems just and proper.

2                                   **Jury Demand**

3    Plaintiff demands a trial by jury of all issues so triable.

4            RESPECTFULLY SUBMITTED this ____ day of May, 2007.

5                    STEPTOE & JOHNSON LLP

6                 By /s/ David R. Nelson

7                 David R. Nelson
                201 E. Washington St., Suite 1600

8                 Phoenix, Arizona 85004-2382
                    Phone: (602) 257-5200

9                 Fax: (602) 257-5299

10               Marc Levin
                Suzanne Dallas Reider

11              STEPTOE & JOHNSON LLP
                1330 Connecticut Avenue, NW

12              Washington, DC 20036

13              Phone: (202) 429-3000
                Fax: (202) 429-3902

14

15              Philip Fornaci
                Washington Lawyers' Committee for Civil

16              Rights
                11 Dupont Circle, N.W., Suite 400

17              Washington, D.C. 20036

18              Phone: (202) 319-1000
                Fax:  (202) 319-1010

19

20

21

22

23

24

25

26

27

28

Doc. #529886 v.1

# U.S. District Court
## Southern District of Indiana (Terre Haute)
### CIVIL DOCKET FOR CASE #: 2:08-cv-00207-RLY-WGH

PUPO-LEYVAS v. BEZY
Assigned to: Judge Richard L. Young
Referred to: Magistrate Judge William G. Hussmann, Jr
Case in other court: Arizona, 2:07-cv-01032
Cause: 28:1983 Civil Rights

Date Filed: 05/21/2008
Jury Demand: Plaintiff
Nature of Suit: 555 Habeas Corpus (Prison Condition)
Jurisdiction: Federal Question

**Plaintiff**

**MANUEL PUPO-LEYVAS**
*an individual*

represented by **David Roy Nelson**
Steptoe & Johnson LLP
201 E Washington St
Ste 1600
Phoenix, AZ 85004-2382
602-257-5200
Fax: 602-257-5299
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Levin**
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6405
Fax: (202) 429-3902
Email: mlevin@steptoe.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Suzanne Dallas Reider**
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8194
Fax: (202) 429-3902
Email: sreider@steptoe.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MARK A BEZY**
*in his individual capacity and official*

represented by **Shelese M. Woods**
UNITED STATES ATTORNEY'S



*capacity as Warden, United States*
*Penitentiary Terre Haute*

OFFICE
10 West Market Street
Suite 2100
Indianapolis, IN 46204
(317) 226-6333
Fax: (317) 226-5027
Email: shelese.woods@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/22/2007 | 1 | COMPLAINT. Filing fee received: $ 350.00, receipt number 1243955, filed by Manuel Pupo-Leyvas. (Attachments: # 1 Civil Cover Sheet)(Nelson, David) [Transferred from Arizona on 5/21/2008.] (Entered: 05/22/2007) |
| 05/22/2007 | | This case has been assigned to the Honorable Stephen M. McNamee. All future pleadings or documents should bear the correct case number: CV 07-1032 PHX-SMM(CRP). (entered by LSP) [Transferred from Arizona on 5/21/2008.] (Entered: 05/23/2007) |
| 05/22/2007 | 3 | NOTICE OF ASSIGNMENT: (ESL) [Transferred from Arizona on 5/21/2008.] (Entered: 05/23/2007) |
| 05/23/2007 | 2 | NOTICE TO FILER OF DEFICIENCY re 1 Complaint filed by Manuel Pupo-Leyvas. Description of deficiency: The following required documents were not attached: summonses. (LSP) [Transferred from Arizona on 5/21/2008.] (Entered: 05/23/2007) |
| 05/23/2007 | 4 | Notice re Summons by Manuel Pupo-Leyvas *to Mark Bezy* (Nelson, David) [Transferred from Arizona on 5/21/2008.] (Entered: 05/23/2007) |
| 05/25/2007 | 5 | Summons Issued as to Mark A. Bezy. (LSP) *** IMPORTANT: You must select "Document and stamps" or "Document and comments" on the print screen in order for the court seal to appear on the summons you print. [Transferred from Arizona on 5/21/2008.] (Entered: 05/25/2007) |
| 06/19/2007 | 6 | Minute Order: Case does not require a magistrate referral judge. Case no longer referred to Charles R Pyle (PS). All further documents should reflect the following case number: CV 07-1032 PHX-SMM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (LSP) [Transferred from Arizona on 5/21/2008.] (Entered: 06/19/2007) |
| 08/28/2007 | 7 | SUMMONS Returned Executed by Manuel Pupo-Leyvas. Mark A. Bezy served on 8/21/2007. (Nelson, David) [Transferred from Arizona on 5/21/2008.] (Entered: 08/28/2007) |
| 10/29/2007 | 8 | SUMMONS Returned Executed upon US Agency/Officer by Manuel Pupo-Leyvas; served on Mark A. Bezy. (Nelson, David) [Transferred from Arizona on 5/21/2008.] (Entered: 10/29/2007) |
| 12/17/2007 | 9 | First MOTION for Extension of Time *Stipulated Motion for Extensions of Time to File Responsive Pleading and Response to Motion to Transfer Venue* by |

| | | Mark A. Bezy. (Attachments: # 1 Text of Proposed Order)(Hirneisen, Jill) [Transferred from Arizona on 5/21/2008.] (Entered: 12/17/2007) |
|---|---|---|
| 12/17/2007 | 10 | MOTION for to Transfer Venue by Mark A. Bezy. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hirneisen, Jill) [Transferred from Arizona on 5/21/2008.] (Entered: 12/17/2007) |
| 12/19/2007 | 11 | ORDER granting 9 the parties' Stipulated Motion for Extensions of Time. ORDER extending the deadline for Defendant to file his responsive pleading until 30 days after the Court rules on the Motion to Transfer Venue. ORDER extending the deadline for Plaintiff to file his Response to Defendant's Motion to Transfer Venue until 1/18/07. Signed by Judge Stephen M McNamee on 12/18/07.(TLJ) [Transferred from Arizona on 5/21/2008.] (Entered: 12/19/2007) |
| 01/18/2008 | 12 | RESPONSE in Opposition re 10 MOTION for to Transfer Venue *Plaintiff's Opposition to Motion to Transfer Venue* filed by Manuel Pupo-Leyvas. (Nelson, David) [Transferred from Arizona on 5/21/2008.] (Entered: 01/18/2008) |
| 01/25/2008 | 13 | First MOTION for Extension of Time *to File Reply to Plaintiff's Response to Motion to Transfer Venue* by Mark A. Bezy. (Attachments: # 1 Text of Proposed Order)(Hirneisen, Jill) [Transferred from Arizona on 5/21/2008.] (Entered: 01/25/2008) |
| 01/28/2008 | 14 | ORDER - IT IS HEREBY ORDERED GRANTING the 13 Motion for Extension of Time to File Reply to Plaintiff's Response to Motion to Transfer Venue. Defendant shall file his Reply to Plaintiff's Response to Motion to Transfer Venue no later than February 1, 2008. Signed by Judge Stephen M McNamee on 1/25/08. (SAT) [Transferred from Arizona on 5/21/2008.] (Entered: 01/28/2008) |
| 02/01/2008 | 15 | REPLY to Response to Motion re 10 MOTION for to Transfer Venue filed by Mark A. Bezy. (Hirneisen, Jill) [Transferred from Arizona on 5/21/2008.] (Entered: 02/01/2008) |
| 05/09/2008 | 16 | ORDER granting 10 Motion Transfer Venue to the United States District Court, Southern District of Indiana, Terre Haute Division FURTHER ORDERED transferring this case to the United States District Court for the Southern District of Indiana, Terre Haute Division. Signed by Judge Stephen M McNamee on 5/8/08.(MAP) [Transferred from Arizona on 5/21/2008.] (Entered: 05/09/2008) |
| 05/21/2008 | 17 | Case transferred in from District of Arizona; Case Number 2:07-cv-01032. Original file with documents numbered 1 - 16, certified copy of transfer order and docket sheet received. (Entered: 05/21/2008) |
| 06/09/2008 | 18 | NOTICE of Appearance by Shelese M. Woods on behalf of Defendant MARK A BEZY. (Woods, Shelese) (Entered: 06/09/2008) |
| 06/09/2008 | 19 | ANSWER to 1 Complaint, filed by MARK A BEZY.(Woods, Shelese) (Entered: 06/09/2008) |
| 06/11/2008 | 20 | MOTION to Appear pro hac vice, Marc E. Levin, filed by Plaintiff MANUEL |

| | | |
|---|---|---|
| | | PUPO-LEYVAS. (Attachments: # 1 Text of Proposed Order)(NKD) (Entered: 06/11/2008) |
| 06/11/2008 | 21 | MOTION to Appear pro hac vice, Suzanne Dallas Reider, filed by Plaintiff MANUEL PUPO-LEYVAS. (Attachments: # 1 Text of Proposed Order)(NKD) Modified on 6/16/2008 (CJD). (Entered: 06/11/2008) |
| 06/11/2008 | 22 | NOTICE of Position in a Tranferred Case, filed by Plaintiff MANUEL PUPO-LEYVAS (NKD) (Entered: 06/11/2008) |
| 06/11/2008 | 23 | RECEIPT #th 00456 in the amount of $ 60.00 PHV FOR Reider and Levin (VS) (Entered: 06/11/2008) |
| 06/12/2008 | 24 | ORDER granting 21 Motion to Appear pro hac vice. Attorney Suzanne Dallas Reider for MANUEL PUPO-LEYVAS added. Signed by Magistrate Judge William G. Hussmann, Jr on 6/12/08. (TMD) (Entered: 06/12/2008) |
| 06/12/2008 | 25 | ORDER granting 20 Motion to Appear pro hac vice. Attorney Marc E. Levin for MANUEL PUPO-LEYVAS added. Signed by Magistrate Judge William G. Hussmann, Jr on 6/12/08. (TMD) (Entered: 06/12/2008) |
| 06/26/2008 | 26 | NOTICE of Appearance by Suzanne Dallas Reider on behalf of Plaintiff MANUEL PUPO-LEYVAS. (Reider, Suzanne) (Entered: 06/26/2008) |

**Case #: 2:08-cv-00207-RLY-WGH**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/17/2008 15:51:13 | | | |
| PACER Login: | us3474 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:08-cv-00207-RLY-WGH |
| Billable Pages: | 2 | Cost: | 0.16 |

# Exhibit 1



GOVERNMENT
EXHIBIT
C
CARDELS 800-783-0399

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

MANUEL PUPO-LEYVAS,                    )
                                       )
                    Plaintiff,         )
                                       )
         v.                            )    No. 2:07-CV-01032-PHX-SMM
                                       )
MARK A. BEZY                           )
                                       )
                    Defendant          )

## DECLARATION OF MICHAEL S. ROMANO

I, Michael S. Romano, hereby declare and state the following:

1.      I am currently employed by the Federal Bureau of Prisons (hereafter "BOP"), and assigned to the Federal Correctional Complex, Terre Haute, Indiana (hereafter "FCC Terre Haute").   I began employment with the BOP as an Attorney in May, 2006,  and have been assigned to this institution since August, 2007.   My position is that of Attorney Advisor, and as a part of my duties and responsibilities, I have access to inmates' records, electronic data maintained on the BOP's SENTRY computer system, Administrative Remedy data, and BOP Program Statements.   I certify that the information provided herein is true and accurate and based on records kept in the regular course of business of the Federal Bureau of Prisons.

2.      The Plaintiff in this action is Manuel Pupo-Leyvas, Federal Register No.90673-000, who was confined at USP Terre Haute from January 13, 2005, through his release from federal custody to parole on December 12, 2005.

3.    Information obtained from Personnel records of FCC Terre Haute reveals that there are approximately thirteen staff members who responded to the event giving rise to the instant complaint.  Twelve of the staff were correctional officers and one was a nurse.  BOP records reveal that approximately ten of the witnesses to the event giving rise to the instant complaint are still employed at the FCC Terre Haute, IN, or reside in the Terre Haute, IN, area.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this _3rd_ day of December, 2007.

Michael S. Romano
Attorney Advisor

55

## Table C-5.
## U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2007

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months |
| TOTAL | 197,025 | 7.4 | 45,628 | 6.3 | 124,659 | 7.1 | 23,553 | 15.4 | 3,185 | 23.8 |
| DC | 2,127 | 10.7 | 836 | 11.9 | 1,240 | 9.9 | 28 | 18.0 | 23 | 43.0 |
| 1ST | 5,175 | 9.3 | 1,969 | 7.9 | 2,210 | 8.7 | 853 | 16.0 | 143 | 26.5 |
| ME | 346 | 6.4 | 163 | 5.6 | 157 | 7.9 | 12 | 12.0 | 14 | 15.5 |
| MA | 2,763 | 9.3 | 1,363 | 7.3 | 957 | 8.2 | 359 | 16.8 | 84 | 28.0 |
| NH | 404 | 8.5 | 92 | 3.9 | 133 | 5.9 | 174 | 13.9 | 5 | - |
| RI | 528 | 8.8 | 137 | 6.8 | 246 | 7.0 | 132 | 12.9 | 13 | 22.0 |
| PR | 1,134 | 12.8 | 214 | 6.1 | 717 | 10.1 | 176 | 22.8 | 27 | 33.0 |
| 2ND | 18,643 | 10.5 | 5,220 | 7.3 | 10,760 | 10.5 | 2,349 | 15.2 | 294 | 29.7 |
| CT | 2,045 | 11.5 | 1,319 | 8.8 | 602 | 16.4 | 69 | 24.0 | 55 | 33.0 |
| NY,N | 1,014 | 12.5 | 218 | 6.2 | 488 | 10.7 | 286 | 24.0 | 22 | 36.0 |
| NY,E | 5,083 | 10.0 | 1,020 | 6.2 | 3,131 | 9.7 | 863 | 15.8 | 69 | 32.7 |
| NY,S | 8,898 | 9.0 | 2,332 | 7.4 | 5,470 | 9.5 | 969 | 12.7 | 127 | 28.3 |
| NY,W | 1,343 | 12.0 | 302 | 6.6 | 876 | 12.5 | 152 | 26.2 | 13 | 28.3 |
| VT | 260 | 9.5 | 29 | 5.0 | 213 | 9.4 | 10 | 23.0 | 8 | 48.0 |
| 3RD | 35,933 | 1.0 | 3,515 | 4.3 | 29,233 | 1.0 | 2,897 | 13.6 | 294 | 24.2 |
| DE | 722 | 14.3 | 97 | 7.0 | 514 | 12.5 | 73 | 24.9 | 38 | 20.7 |
| NJ | 5,466 | 7.3 | 1,875 | 5.2 | 2,129 | 5.5 | 1,398 | 14.3 | 64 | 31.3 |
| PA,E | 25,923 | 1.0 | 596 | 2.8 | 23,937 | 1.0 | 1,275 | 10.3 | 115 | 17.3 |
| PA,M | 1,515 | 7.5 | 477 | 5.5 | 938 | 7.0 | 62 | 20.4 | 38 | 24.0 |
| PA,W | 2,018 | 8.5 | 440 | 4.9 | 1,507 | 9.5 | 32 | 25.0 | 39 | 27.0 |
| VI | 295 | 19.9 | 30 | 6.0 | 208 | 15.5 | 57 | 32.4 | - | - |
| 4TH | 12,367 | 7.0 | 3,420 | 6.0 | 7,553 | 8.3 | 1,185 | 9.2 | 209 | 19.2 |
| MD | 2,622 | 7.0 | 1,167 | 6.5 | 1,162 | 6.8 | 250 | 8.4 | 43 | 23.5 |
| NC,E | 940 | 11.4 | 398 | 8.1 | 528 | 12.0 | 5 | - | 9 | - |
| NC,M | 720 | 10.7 | 233 | 7.1 | 357 | 12.8 | 118 | 11.2 | 12 | 21.0 |
| NC,W | 929 | 9.3 | 359 | 11.3 | 456 | 5.3 | 100 | 12.5 | 14 | 23.0 |
| SC | 2,696 | 9.4 | 383 | 3.8 | 2,101 | 10.0 | 163 | 13.5 | 49 | 26.0 |
| VA,E | 2,323 | 5.8 | 512 | 3.9 | 1,253 | 5.6 | 514 | 7.8 | 44 | 10.0 |
| VA,W | 704 | 8.2 | 172 | 7.8 | 495 | 9.0 | 16 | 9.0 | 19 | 10.0 |
| WV,N | 403 | 11.8 | 135 | 10.7 | 255 | 12.6 | 9 | - | 4 | 16.0 |
| WV,S | 1,030 | 6.3 | 61 | 3.8 | 946 | 6.4 | 8 | - | 15 | 21.5 |

GOVERNMENT EXHIBIT
D

56

## Table C-5. (March 31, 2007—Continued)

| Circuit and District | Total Cases | | No Court Action | | Before Pretrial | | Court Action During or After Pretrial | | Trial | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | 20,426 | 8.9 | 4,773 | 6.0 | 12,630 | 7.1 | 2,593 | 13.0 | 430 | 21.5 |
| LA,E | 4,203 | 6.3 | 169 | 3.8 | 2,441 | 4.3 | 1,519 | 15.4 | 74 | 20.4 |
| LA,M | 723 | 10.9 | 267 | 6.3 | 416 | 11.5 | 27 | 24.5 | 13 | 23.0 |
| LA,W | 1,544 | 11.0 | 505 | 7.1 | 955 | 12.2 | 43 | 23.0 | 41 | 29.0 |
| MS,N | 845 | 11.8 | 158 | 5.5 | 545 | 11.4 | 115 | 17.4 | 27 | 27.7 |
| MS,S | 2,262 | 8.5 | 1,426 | 8.6 | 748 | 11.5 | 43 | 20.5 | 45 | 18.3 |
| TX,N | 2,899 | 7.9 | 144 | 6.7 | 2,701 | 7.9 | 4 | - | 50 | 21.7 |
| TX,E | 1,645 | 9.5 | 336 | 4.6 | 1,223 | 9.3 | 44 | 13.0 | 42 | 19.0 |
| TX,S | 4,127 | 7.6 | 1,053 | 4.4 | 2,208 | 7.2 | 776 | 10.9 | 90 | 20.6 |
| TX,W | 2,178 | 8.1 | 715 | 6.4 | 1,393 | 8.6 | 22 | 15.0 | 48 | 17.4 |
| **6TH** | 18,811 | 11.8 | 3,642 | 5.8 | 11,440 | 12.7 | 3,430 | 13.1 | 299 | 24.8 |
| KY,E | 1,605 | 10.6 | 195 | 6.3 | 1,377 | 10.2 | 14 | 21.0 | 19 | 19.5 |
| KY,W | 1,155 | 9.0 | 240 | 8.9 | 789 | 8.5 | 110 | 17.3 | 16 | 19.0 |
| MI,E | 3,620 | 8.0 | 787 | 4.8 | 1,286 | 6.6 | 1,479 | 13.8 | 68 | 24.0 |
| MI,W | 888 | 7.8 | 146 | 3.7 | 717 | 8.0 | 9 | - | 16 | 24.0 |
| OH,N | 6,384 | 19.2 | 845 | 4.7 | 4,652 | 19.0 | 837 | 10.0 | 50 | 20.0 |
| OH,S | 2,203 | 12.7 | 873 | 8.9 | 796 | 12.0 | 491 | 14.9 | 43 | 19.7 |
| TN,E | 1,034 | 12.0 | 153 | 7.9 | 397 | 9.9 | 450 | 16.9 | 34 | 25.5 |
| TN,M | 1,028 | 10.9 | 64 | 4.2 | 930 | 10.0 | 9 | - | 25 | 22.0 |
| TN,W | 894 | 12.5 | 339 | 10.4 | 496 | 12.9 | 31 | 24.0 | 28 | 29.4 |
| **7TH** | 12,776 | 7.6 | 3,823 | 5.7 | 7,270 | 8.0 | 1,441 | 11.7 | 242 | 27.5 |
| IL,N | 6,431 | 6.3 | 2,270 | 5.7 | 3,525 | 6.4 | 526 | 12.2 | 110 | 28.7 |
| IL,C | 702 | 10.8 | 296 | 8.2 | 380 | 10.5 | 11 | 12.5 | 15 | 28.0 |
| IL,S | 880 | 8.1 | 243 | 5.3 | 605 | 8.6 | 15 | 16.4 | 17 | 20.5 |
| IN,N | 1,246 | 10.1 | 292 | 6.6 | 646 | 10.2 | 282 | 14.7 | 26 | 22.0 |
| IN,S | 1,942 | 10.8 | 500 | 8.5 | 1,127 | 10.1 | 293 | 13.9 | 22 | 23.4 |
| WI,E | 1,087 | 8.3 | 171 | 3.3 | 787 | 9.2 | 96 | 15.3 | 33 | 66.4 |
| WI,W | 488 | 4.1 | 51 | 1.4 | 200 | 3.3 | 218 | 6.0 | 19 | 11.4 |
| **8TH** | 14,705 | 12.1 | 3,905 | 5.5 | 6,052 | 9.6 | 4,490 | 36.6 | 258 | 21.7 |
| AR,E | 1,242 | 13.5 | 269 | 12.3 | 904 | 13.3 | 8 | - | 61 | 20.0 |
| AR,W | 705 | 10.3 | 32 | 6.7 | 622 | 10.7 | 28 | 1.0 | 23 | 14.0 |
| IA,N | 474 | 9.8 | 53 | 5.5 | 399 | 9.6 | 7 | - | 15 | 20.5 |
| IA,S | 601 | 10.9 | 95 | 7.2 | 329 | 8.8 | 157 | 15.0 | 20 | 21.5 |
| MN | 6,786 | 23.7 | 1,748 | 3.4 | 780 | 5.3 | 4,229 | 36.2 | 29 | 28.5 |
| MO,E | 1,918 | 8.0 | 725 | 8.0 | 1,151 | 7.4 | 4 | 21.0 | 38 | 22.0 |
| MO,W | 1,636 | 8.7 | 797 | 7.0 | 805 | 9.0 | 13 | 20.0 | 21 | 20.0 |
| NE | 898 | 11.6 | 33 | 1.0 | 799 | 11.3 | 31 | - | 35 | 23.5 |
| ND | 204 | 12.4 | 71 | 8.7 | 118 | 12.0 | 4 | - | 11 | 20.5 |
| SD | 241 | 10.8 | 82 | 10.0 | 145 | 10.7 | 9 | - | 5 | 25.0 |

57

## Table C-5. (March 31, 2007—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
|---|---|---|---|---|---|---|---|---|---|---|
| **9TH** | 28,376 | 8.8 | 10,250 | 6.5 | 16,000 | 8.9 | 1,643 | 13.4 | 483 | 23.7 |
| AK | 335 | 9.9 | 103 | 6.9 | 230 | 10.8 | - | - | 2 | - |
| AZ | 2,005 | 11.6 | 763 | 8.7 | 1,131 | 11.9 | 55 | 21.0 | 56 | 31.5 |
| CA.N | 4,826 | 6.1 | 2,126 | 5.0 | 1,446 | 6.8 | 1,201 | 12.4 | 53 | 27.0 |
| CA.E | 2,279 | 9.5 | 923 | 7.7 | 1,303 | 10.8 | 23 | 22.7 | 30 | 34.0 |
| CA.C | 8,636 | 7.8 | 3,033 | 6.8 | 5,365 | 8.1 | 81 | 19.5 | 157 | 18.9 |
| CA.S | 1,983 | 6.2 | 267 | 4.3 | 1,650 | 6.0 | 40 | 6.8 | 26 | 25.5 |
| HI | 444 | 9.8 | 362 | 7.1 | 193 | 10.8 | 39 | 19.7 | 13 | 16.0 |
| ID | 607 | 12.4 | 30 | 4.3 | 363 | 11.7 | 36 | 20.0 | 15 | 16.0 |
| MT | 522 | 11.0 | 220 | 9.8 | 224 | 10.3 | 62 | 15.9 | 16 | 31.0 |
| NV | 1,531 | 10.0 | 791 | 10.4 | 682 | 9.5 | 43 | 9.5 | 15 | 20.0 |
| OR | 1,874 | 10.5 | 658 | 9.7 | 1,160 | 11.9 | 8 | - | 15 | 36.0 |
| WA.E | 530 | 8.3 | 168 | 5.6 | 321 | 8.5 | 29 | 13.0 | 48 | 23.9 |
| WA.W | 2,746 | 9.4 | 787 | 6.1 | 1,902 | 10.0 | 21 | 16.0 | 12 | 23.5 |
| GUAM | 31 | 7.0 | 11 | 6.0 | 16 | 5.0 | 4 | - | 36 | 19.0 |
| NMI | 27 | 9.0 | 8 | - | 14 | 8.5 | 1 | - | - | - |
| **10TH** | 8,072 | 8.1 | 1,394 | 5.4 | 5,161 | 8.5 | 1,337 | 12.1 | 180 | 21.5 |
| CO | 2,034 | 8.6 | 88 | 2.1 | 1,777 | 7.9 | 151 | 18.0 | 48 | 30.5 |
| KS | 1,162 | 9.0 | 357 | 7.7 | 644 | 8.0 | 130 | 18.0 | 31 | 23.0 |
| NM | 1,073 | 9.6 | 135 | 4.2 | 465 | 8.1 | 452 | 11.6 | 21 | 20.4 |
| OK.N | 674 | 10.0 | 70 | 3.8 | 573 | 11.9 | 16 | 19.5 | 15 | 19.0 |
| OK.E | 454 | 8.2 | 319 | 9.0 | 110 | 7.8 | 16 | 11.0 | 9 | - |
| OK.W | 1,237 | 8.0 | 320 | 3.9 | 492 | 7.0 | 403 | 11.0 | 22 | 15.5 |
| UT | 1,137 | 10.2 | 86 | 4.2 | 994 | 10.3 | 36 | 19.7 | 21 | 35.0 |
| WY | 301 | 11.3 | 49 | 5.0 | 106 | 8.3 | 133 | 10.0 | 13 | 15.0 |
| **11TH** | 19,608 | 7.4 | 2,881 | 4.2 | 15,090 | 7.7 | 1,307 | 13.4 | 330 | 20.1 |
| AL.N | 2,956 | 5.2 | 579 | 6.8 | 2,313 | 4.8 | 29 | 21.7 | 35 | 26.0 |
| AL.M | 817 | 10.5 | 227 | 7.2 | 493 | 10.4 | 74 | 17.0 | 23 | 17.4 |
| AL.S | 613 | 8.6 | 120 | 5.4 | 452 | 8.4 | 29 | 17.0 | 12 | 14.0 |
| FL.N | 877 | 7.9 | 236 | 5.2 | 606 | 7.4 | 19 | 14.0 | 16 | 21.0 |
| FL.M | 4,545 | 8.6 | 397 | 4.1 | 3,955 | 8.1 | 114 | 17.5 | 79 | 21.4 |
| FL.S | 5,676 | 5.9 | 563 | 2.7 | 4,727 | 5.1 | 288 | 10.3 | 88 | 17.2 |
| GA.N | 2,943 | 8.6 | 523 | 4.8 | 1,642 | 7.6 | 724 | 12.3 | 54 | 25.5 |
| GA.M | 659 | 11.1 | 136 | 7.9 | 509 | 12.6 | 2 | - | 12 | 22.0 |
| GA.S | 522 | 9.0 | 100 | 5.0 | 393 | 9.5 | 18 | 17.0 | 11 | 23.5 |

NOTE: MEDIAN TIME INTERVALS NOT COMPUTED WHEN FEWER THAN 10 CASES REPORTED. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.